UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | |
|---|---|
| A Step Above Daycare Academy, Inc., ) | CASE NO. 5:24 CV 1322 |
| ) | |
| Plaintiff, ) | JUDGE PATRICIA A. GAUGHAN |
| ) | |
| vs. ) | |
| ) | |
| West Bend Mutual Insurance Co., ) | |
| ) | **Memorandum of Opinion and Order** |
| ) | |
| Defendant. ) | |

## **INTRODUCTION**

This matter is before the Court upon West Bend Mutual Insurance Company's Motion to Compel Completion of Appraisal and To Stay Litigation. (Doc. 3.) This is a breach of contract case. For the reasons that follow, the motion is GRANTED.

## **BACKGROUND**

Plaintiff A Step Above Daycare Academy, Inc. ("A Step Above") brings this lawsuit against defendant West Bend Mutual Insurance Company ("West Bend"). A Step Above operates a daycare center in Cleveland, Ohio. On or about October 14, 2022, an unknown driver crashed into the storefront of the daycare. At the time of the accident, A Step Above possessed a Commercial Lines Insurance Policy (the "Policy") through West Bend that covered the daycare building and the daycare

business. A Step Above filed a claim with West Bend under the Policy for compensation for the damage caused by the accident.

The parties do not dispute that the accident caused some damage to the building as well as to A Step Above's personal property. In fact, West Bend has remitted payment for the undisputed damage. The parties disagree, however, as to whether West Bend must make further payments under the Policy. The parties also disagree about the proper mechanism to resolve their dispute. On April 1, 2024, West Bend demanded appraisal of the amount of loss in accordance with the terms of the Policy.[1]

A Step Above initially acquiesced to West Bend's appraisal demand, but ultimately refused to permit any further appraisal action. A Step Above then filed the instant lawsuit on August 1, 2024, alleging three counts: (1) breach of contract (Count One); (2) bad faith (Count Two); and (3) declaratory judgment (Count Three). As part of its breach of contract claim, A Step Above alleges that the Policy covers, and West Bend has refused to pay, additional repair costs.[2] According to A Step Above, whether these additional repairs are covered is a coverage question that this Court must answer.

---

[1] The Policy contains an appraisal provision (the "Appraisal Provision") that permits either party to demand that a panel of appraisers resolve disagreements over the amount of loss. Each party selects one "competent and impartial" appraiser. Those appraisers then select a third appraiser (an "umpire"). The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. (Doc. 1-2, at 76.)

[2] A Step Above also seeks a declaratory judgment through its Count Three that the Policy covers these additional repair costs.

West Bend contends that any coverage for additional repair costs is subject to and dependent on the outcome of an appraisal. Accordingly, West Bend moves for an order compelling the completion of the appraisal process and staying the litigation. A Step Above opposes West Bend's motion.

**ANALYSIS**

Appraisal provisions in insurance contracts are recognized as a mechanism to resolve disputes over amount of loss without litigation. *See Saba v. Homeland Ins. Co. of Am.*, 112 N.E.2d 1, 3 (Ohio 1907) ("'Their purpose is to provide a plain, speedy, inexpensive and just determination of the extent of the loss . . . .'" (citation omitted)). In Ohio, parties may enforce appraisal provisions just as they can any other bargained-for contractual right. *See Westview Vill. v. State Farm Fire & Cas. Co.*, 2022 WL 3584263, at *3 (N.D. Ohio Aug. 22, 2022) (citing *Saba*, 112 N.E.2d at 3).

Generally, a decision by the appraisers "is binding as to the amount of loss," *Prakash v. Allstate Ins. Co.*, 2021 WL 37698, at *2 (N.D. Ohio Jan. 5, 2021), and "a court should not interfere with an appraisal award absent fraud, mistake, or misfeasance." *Stuckman v. Westfield Ins. Co.*, 968 N.E.2d 1012, 1018 (Ohio Ct. App. 2011). On the other hand, "Ohio law mandates that insurance policy coverage disputes are legal questions for the Court." *Prakash*, 2021 WL 37698, at *2 (citing *McPheeters v. United Servs. Auto. Ass'n*, 2020 WL 4901637, at *2 (S.D. Ohio Aug. 20, 2020) (citing *Dutch Maid Logistics, Inc. v. Acuity*, 2009 WL 1019857, at *5 (Ohio Ct. App. Apr. 16, 2009))). As other courts have recognized, "[s]eparating coverage issues from loss issues is not a simple task[.]" *E.g.*, *id.* at *3. And further complicating the inquiry, Ohio has not explicitly addressed whether appraisers may determine the cause of damages when calculating the amount of loss.

Nevertheless, courts in a variety of jurisdictions—including Ohio—have reasoned that when an insurance policy does not define "amount of loss" to limit what appraisers may consider,[3] appraisers may consider the cause of damages to separate covered damage from uncovered damage. *E.g.*, *Stonebridge at Golf Vill. Squares Condo. Ass'n v. Phoenix Ins. Co.*, 2022 WL 7178548, at 8 (S.D. Ohio Sept. 22, 2022) (collecting cases). For example, in an analogous case, *Westview Village v. State Farm Fire & Casualty Co.*, the court analyzed Ohio case law to determine "whether the Ohio Supreme Court would construe 'amount of loss' to permit appraisers to determine causation." 2022 WL 3584263, at *2. The court noted that while the Ohio Supreme Court has not addressed causation in appraisal directly, "[it] has noted that appraisal allows parties to determine 'the extent of the loss.'" *Id.* The court then observed that "[o]ther jurisdictions that allow appraisal to determine a loss's 'extent' have decided that doing so requires appraisers to separate covered damage from uncovered damage." *Id.* at *2–3 (discussing cases). The court concluded that because Ohio case law "instructs that appraisers may determine the extent of damages, they may also consider the cause of those damages." *Id.* at *3 (citing *Saba*, 112 N.E.2d at 3). Absent any clear guidance from the Ohio Supreme Court to the contrary, this Court agrees with this reasoning.

Here, A Step Above identifies three specific repairs that it alleges were necessitated by the car accident and covered under the Policy: (1) the cost to replace a steel beam; (2) the cost of a security system that was damaged in the accident; and (3) the cost of making the storefront reasonably

---

[3] "Parties sometimes agree to a policy that prohibits appraisers from answering causation questions when setting the amount of loss." *Stonebridge at Golf Vill. Squares Condo. Ass'n.*, 2022 WL 7178548, at *2 (quoting *Westview Vill.*, 2022 WL 3584263, at *2). Here, neither party contends that the Policy defines "amount of loss" in this way.

comparable in appearance. Like *Westview Village*, most of the parties' dispute "embodies a factual amount-of-loss dispute appropriate for appraisal." 2022 WL 3584263, at *4. The parties agree that a car accident caused some damage to A Step Above's covered building and personal property. Further, they agree that the Policy covers damage caused by a car accident. But they disagree about the extent of damage caused by the car accident. "Appraisal is the proper mechanism to resolve that disagreement." *Westview Vill.*, 2022 WL 3584263, at *2.

A Step Above repeatedly claims that it is not asking the Court to determine whether the accident caused damage to the steel beam, but rather whether the steel beam is required to be replaced as a category of coverage under the Policy. A Step Above ignores, however, that the Court cannot determine whether the costs it seeks associated with the steel beam are covered under the Policy until there has been a determination as to the impact of the accident on the need to replace the steel beam—a factual determination to be made by the appraisers.[4] This is true as well for the security system that A Step Above alleges was damaged in the car accident and should be paid as a covered loss.[5]

---

[4] A Step Above contends that Section A(1)(dd) of the Policy requires West Bend to replace the steel beam. There are several paragraphs under that Section outlining when West Bend must pay for otherwise undamaged property and A Step Above does not specify which applies. Nevertheless, any coverage by West Bend would depend on a finding that the car crash impacted the building and/or steel beam in such a way that the steel beam must be replaced.

[5] West Bend contends that the security system is not in dispute because West Bend already paid the actual cash value of the damaged security system. (Doc. 8, at 5.) Further, West Bend contends that A Step Above never made any claim for the replacement cost of the security system because it never submitted necessary documentation demonstrating that it had actually replaced the security system—even after West Bend warned that if A Step Above did not provide the documentation, West Bend would assume A Step Above no longer intended to make a claim for the replacement cost. (*Id.* at 5–6 (citing Doc. 8-2, at 2).) Whether or not A Step Above can legally maintain its claim for the replacement cost of the security system is not before this Court, but it is clear that the amount of any such replacement cost is subject to appraisal.

*Westview Vill.*, 2022 WL 3584263, at *2 ("[T]he extent of damage that a covered event caused presents a factual question, not a legal one."). Accordingly, West Bend's motion to compel completion of appraisal and to stay the litigation is granted to determine the amount of loss related to the steel beam and security system.[6]

A Step Above further seeks a determination from this Court that West Bend must pay to make additional repairs to the storefront under the Policy to comply with Ohio Admin. Code § 3901-1-54(I)(1)(b) ("When an interior or exterior loss requires replacement of an item and the replaced item does not match the quality, color or size of the item suffering the loss, the insurer shall replace as much of the item as to result in a reasonably comparable appearance."). The parties do not dispute that the accident caused some damage to the storefront and that West Bend remitted payment for repair of the undisputed damage.

---

[6] A Step Above's contention that this Court lacks authority to stay the litigation during the appraisal is mistaken. "[A] trial court has discretion to compel appraisal and grant a stay of proceedings for such a provision." *Phifer-Edwards, Inc. v. Hartford Fire Ins. Co.*, 1994 WL 236225, at *7 (Ohio Ct. App. May 26, 1994). To be sure, several courts applying Ohio law have stayed similar litigation during an appraisal. *E.g.*, *Westview Vill.*, 2022 WL 3584263, at *4.

Further, A Step Above contends that, before any appraisal, this Court should first address its demand that the Court "declare the appropriate appraisal process/parameters"—specifically, whether A Step Above's counsel is permitted to represent his client in the appraisal. (Doc. 7, at 16.) But this Court cannot set the appraisal "process/parameters." Despite A Step Above's contention in its opposition brief, its claim for declaratory judgment makes no request for a clarification of the appraisal's process or parameters. (*See* Doc. 1-2 ¶¶ 60–62.) *See Hull v. Motorists Ins. Grp.*, 2011 WL 2040958, at *3 (Ohio Ct. App. May 25, 2011) ("Because [plaintiff] did not request a declaratory judgment, the trial court did not have authority to define the appraisers' and umpire's role under the commercial property insurance policy."); *see also Waskul v. Washtenaw Cty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020) (holding that plaintiffs cannot amend their complaints through opposition briefs).

6

It is not immediately clear to this Court whether West Bend disputes that any additional repairs are covered under the Policy or whether West Bend disputes the amount of any additional repairs. A Step Above alleges that West Bend disputes coverage. While that may be true, West Bend's motion suggests it also disputes the amount of any additional repairs necessary to comply with Ohio Admin. Code § 3901-1-54(I)(1)(b).

Whether the Policy requires West Bend to comply with Ohio Admin. Code § 3901-1-54(I)(1)(b) is a legal question. *See Olson v. State Farm Fire & Cas. Co.*, 2024 WL 4343033, at *4 (S.D. Ohio Sept. 30, 2024) ("What the parties disagree about is whether . . . the Policy would require a complete roof replacement so as to comply with Ohio law. Resolving that disagreement necessarily asks a question of law. Namely, does the Policy require State Farm to provide a roof replacement to create a 'reasonably comparable appearance' in compliance with Ohio law? Answering that question . . . is not resolvable by an appraisal because it regards policy interpretation." (internal citations omitted)). Nevertheless, it does not appear the parties agree on the amount and cost of additional repairs, and, therefore, the ultimate disposition of this issue will depend on the appraisal's determination of how much damage was caused to the storefront by the car accident, what additional repairs, if any, are necessary to restore the property to a reasonably comparable appearance, and how much those repairs will cost. *See Reserves at Beavercreek Condo. Ass'n v. State Farm Fire & Cas. Co.*, 2023 WL 9183683, at *1–2 (S.D. Ohio Dec. 15, 2023); *cf. Olson*, 2024 WL 4343033, at *3 (finding that the parties' disagreement was "not so much" over the cost of the repair but whether full repair was required under the Policy). Further, because appraisal is necessary to determine the amount of loss related to the steel beam and the security system, simultaneously conducting an appraisal of the requested storefront repairs promotes judicial economy and efficiency.

**CONCLUSION**

For the foregoing reasons, West Bend Mutual Insurance Company's Motion to Compel Appraisal and Stay Litigation is GRANTED. This case is hereby STAYED until the appraisal occurs. The parties' respective appraisers shall agree upon an umpire within TWENTY-ONE 21 DAYS of the entry of this Memorandum Opinion and Order. If the parties' appraisers are unable to agree upon an umpire within that time, each party shall submit the names of three (3) umpire candidates, along with a resume or CV for each proposed umpire to the Court, within THIRTY (30) DAYS of the entry of this Memorandum Opinion and Order so that the Court can select an Umpire in accordance with the Policy's Appraisal Provision. Upon completion of the appraisal, the parties shall notify the Court within THIRTY (30) DAYS as to whether any live dispute remains in this case.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 10/23/24